(No. 35314.—

Lucille G. Heckendorn, Appellant, *vs.* The First National Bank of Ottawa, Admr., Appellee.

*Opinion filed March 31, 1960—Rehearing denied May 16, 1960.*

Hugh M. Matchett, Edward J. Bradley, and John J. Riordan, all of Chicago, and Robert E. Richardson, Jr., of Ottawa, for appellant.

Berry & O'Conor, of Ottawa, for appellee.

Mr. Justice Davis delivered the opinion of the court:

This case presents the issue of whether a widow has the right to sue her deceased husband's estate for a tort committed during coverture. Plaintiff sued the defendant, as administrator of the estate of her deceased husband, for personal injuries resulting from her husband's alleged wilful misconduct on December 15, 1956. Upon motion of the defendant, the circuit court of La Salle County dismissed the complaint and entered judgment for the defendant on the ground that the action was barred by section 1 of "An Act to revise the law in relation to husband and wife." (Ill. Rev. Stat. 1957, chap. 68, par. 1.) Plaintiff has appealed to this court, the constitutionality of section 1 being directly involved.

This section provides that: "A married woman may, in all cases, sue and be sued without joining her husband with her, to the same extent as if she were unmarried; provided, that neither husband nor wife may sue the other for a tort to the person committed during coverture. An attachment of judgment in such action may be enforced by or against her as if she were a single woman."

The plaintiff contends that the enactment has no application after the marriage relationship has been terminated by death, or, in the alternative, that if it is applicable, it is an unconstitutional deprivation of plaintiff's rights. Defendant, however, maintains that the section is both reasonable and constitutional and that it bars this action. In resolving these issues, we must view the enactment in its historical perspective.

At common law a married woman had no separate identity before the law; she was regarded as a chattel with neither property nor other rights which were enforceable against anyone. Her husband owned all her property and asserted all of her legal and equitable rights. It therefore followed that a husband was immune from suits by his wife, either in tort or contract. *Brandt* v. *Keller,* 413 Ill. 503; *Welch* v. *Davis,* 410 Ill. 130; *Snell* v. *Snell,* 123 Ill. 403.

While the feudal basis of this common-law immunity has ceased to exist, we know of no court that has abolished it in the absence of legislative action. Modern jurisprudence has continued to recognize the anachronistic foundation of the common-law doctrine, but new bases of public policy have been advanced to justify adherence to it. (Anno. 43 A.L.R.2d 632.) The majority of the jurisdictions within the United States are in accord with our view as expressed in *Brandt* v. *Keller,* 413 Ill. 503, 506, where we stated: "The vitality of the [immunity] rule in each jurisdiction depends upon the construction of the statutes emancipating married women."

We have been critical of the common-law rule, and in *Welch* v. *Davis,* 410 Ill. 130, we permitted a wife's administrator to sue the executor of her deceased husband's estate under the Wrongful Death Act, for the benefit of her minor dependent daughter. Later in *Brandt* v. *Keller,* 413 Ill. 503, we considered the Married Women's Act of 1874 (Ill. Rev. Stat. 1951, chap. 68, pars. 1 to 21,) and its effect on the common-law prohibition against suits by a wife against her husband. We there held, as a matter of statutory construction, that the statute reflected a legislative intent to remove a married woman's common-law disability with reference to suing and being sued, so that she would be placed in the same status as if she were unmarried, and we refused to read the common-law disability into the clear language of the 1874 act.

Mindful of the effect of the decision in *Brandt* v. *Keller,* the legislature at its next session amended the Married Women's Act to provide that "neither husband nor wife may sue the other for a tort to the person committed during coverture." (Ill. Rev. Stat. 1953, chap. 68, par. 1.) We are now concerned with the force of this proviso.

Plaintiff contends that it does not apply to actions by a wife against her husband's estate after coverture has ended by death. We see no merit in this argument. The legislature created a statutory disability during the lifetime of the parties. Its intent was to prevent a cause of action from coming into being. If a cause of action could not exist in favor of the wife and against the tort-feasor husband, it could not survive his death. We find nothing in the language of the proviso to justify the anomalous conclusion that the existence of a cause of action between husband and wife is entirely dependent on the fortuitous event of the death of the spouse. We therefore conclude that the proviso of 1953 was intended to bar the present action.

We are then met with the argument that the enactment

is beyond the power of the legislature and unconstitutional. Plaintiff first contends the proviso is contrary to section 19 of article II of the constitution of Illinois in that it denies her a remedy for a wrong. However, it is for the legislature to determine the public policy and the requirements of public convenience and welfare. We cannot say that the proviso in question constitutes an unreasonable exercise of the police power and an arbitrary determination of the public policy of the State: Cf. *Clarke* v. *Storchak*, 384 Ill. 564; *Hindman* v. *Holmes*, 4 Ill. App. 2d 279.

Section 19 enunciates a basic policy of jurisprudence that serves both to preserve the rights recognized by the common law and to permit the fashioning of new remedies to meet changing conditions. However, this policy expression does not authorize us to create a cause of action unknown to the common law in the face of an express statutory prohibtion. Substantially similar constitutional provisions have been held not to abrogate the common-law disability in *Woltman* v. *Woltman*, 153 Minn. 217, 189 N.W. 1022, and in *Gowin* v. *Gowin*, (Tex. Civ. App. 1924) 264 S.W. 529. Accordingly, we hold that section 19 of article II of the Illinois constitution does not require us to strike down the legislative prohibition of the present action.

Nor do we believe that the statutory proviso of 1953 violates the due process clauses of either the State or Federal constitutions. It is a legislative determination of public policy and a command to return to the basic common-law doctrine which immunized the husband from suits by his wife for a tort to her person. In *Brandt* v. *Keller*, 413 Ill. 503, we held that by the adoption of the Married Women's Act of 1874, the legislature intended to abolish the common-law disability of a wife to sue her husband in tort. We there acknowledged that such action was in derogation of the common law and that the legislature thereby created a new right and remedy unknown to the common law.

As it was within the power of the legislature to determine public policy and grant such right in 1874, it was also within its authority in 1953 to change this policy concept and to partially withdraw such right. This it did by a proviso which applies equally to husband and wife and is consonant with a widely held view of public policy as enunciated in a majority of decisions in this country. See: Anno. 43 A.L.R.2d 632.

It is not our place to criticize the policy determination of the legislature. Nor need we surmise our decision had this case come before us in the absence of legislation. We are only concerned with the authority of the legislature to abolish or limit, by a nonarbitrary statute, a right unknown to common law, which it had previously created. In this case, where no rights had vested, we are neither aware of a constitutional ban, (cf. *Hall* v. *Gillins,* 13 Ill.2d 26; *Clarke* v. *Storchak,* 384 Ill. 564,) nor do we know of a court which has abolished the doctrine of marital disability in the absence of an applicable statute.

We therefore conclude that the 1953 proviso of section 1 is valid and bars this action. The judgment of the trial court is accordingly affirmed.

*Judgment affirmed.*